If it pleases the Court, as an initial matter, the Court should remand this case because there is no dispute here that the immigration judge did rely on all of the documentary evidence presented. The Court should remand because the Board, in its decision, said the immigration judge did not rely on all the documentary evidence. However, the Respondent here, in their brief, concedes that the immigration judge did rely on all of the evidence. The Board, in its decision, declined to address Mr. Escobar's argument that the evidence submitted was unreliable, unverifiable, internally inconsistent, and should not have been admitted and should not have been Here, the Respondent agrees with Mr. Escobar that the immigration judge did, in fact, rely on all of the documentary evidence. You can see that in Respondent's brief at 29 and 32. Because of this, the Court should remand the case to the Board because the Board should have the opportunity to address reliance on the evidence, the weight afforded, and the admissibility of the evidence in the first instance. If this Court chooses not to remand for this issue, there are other reasons why this Court should either grant Mr. Escobar's application for relief or remand because of several legal issues. Namely, the Board also declined to address Mr. Escobar's argument that the inferences made were impermissible by the immigration judge. And then second, the Board erred in denying Mr. Escobar's application for deferral of removal under the U.N. Could I go back to your first point? I'm behind you, obviously. Sorry, Your Honor, I'm happy. No, no, no, no. No apology needed. Now, the BIA concludes, these documents as a whole, when viewed with the appropriate weight, clearly and convincingly support the IJ's finding that the Respondent is a made a mistake thereon? On footnote 2, the BIA refuses or declines to address Mr. Escobar's argument that the documentary evidence should not have been admitted and that if admitted, it should have been afforded very little weight. In footnote 2, the BIA says the immigration judge did not rely on all of it. Therefore, we don't have to address its admissibility. Here, the Respondent in their brief agrees with us that the immigration judge did rely on all of it. And the immigration judge was clear. In his decision, he says all of the evidence and testimony, all of the exhibits and testimony, were taken into consideration and considered even if not expressly stated here. Okay. Now, that footnote 2 is three sentences, no, maybe two long sentences, whatever, two or three sentences ahead of the sentence I quoted. Does the sentence I quote inoculate against the previous footnote? No, Your Honor. Why not? Because the Board still did not address the argument of admissibility of the evidence. They used their statement that not all of the evidence was relied upon in order to decline to address the Petitioner's valid arguments that a lot of these documents are incredibly unreliable, unverifiable. They're translated in such a way that their meaning is obfuscated. There are very important legal issues here that the Board uses, like you said, two long sentences to just say, oh, your argument doesn't matter because the immigration judge didn't rely on it. The immigration judge did rely on it. And there's no dispute before the Court because the Respondent agrees the immigration judge did rely on it. He expressed it clearly in his decision. And the Respondent quotes the immigration judge's or paraphrases the immigration judge's decision in saying that the immigration judge did take all of the evidence in total and together all of the documents informed the judge's decision to find alienage. However, even if this Court chooses not to remand based on that ground, the immigration judge explicitly stated that all these documents did not meet the burden of proof for the Department of Homeland Security to find alienage. It is solely the Department of Homeland Security's burden to prove alienage. The judge impermissibly relied on a matter of DR to say, I can make some inferences, some common-sense inferences. I can make a few logical leaps here and find that, yes, alienage was established even if the Department didn't do it. And that's impermissible. Don't our cases and immigration cases in general support the ability to use reasonable inferences? Yes, Your Honor. In other situations, not to prove alienage. Well, which would cite your best authority for why alienage is somehow treated differently? There's no specific case on point. However, the language of the statute and the cases that address inferences are very different. We have matter of DR, which the Board refused to analyze our argument regarding matter of DR. Matter of DR has the Department of Homeland Security presenting facts, and the Respondent meant Mr. DR presenting his facts. The immigration judge is allowed to compare and contrast these two facts, make inferences, and make a decision based on that. Here, we have the Department of Homeland Security solely bears the burden of proof to show alienage. Mr. Escobar does not have facts to present, to compare and contrast until the Department has met its burden. If the Department on its own does not meet its burden, Mr. Escobar cannot rebut this. Mr. Escobar cannot prevent facts. The burden rests solely with the Department. Further, looking at matter of Guevara, and also would-be V.I.N.S., these are cases where they're looking at alienage, but they're looking at people who have either previously admitted, yes, I'm from Mexico, or yes, I'm from such and such country. And in those cases, the Department of Homeland Security had already met their burden, and the immigration judges relied on inferences to say the Respondent cannot rebut the burden already met by the Department. Here, our situation is different. The immigration judge, in plain language, says the Department's documentary evidence is insufficient. Insufficient to meet the burden of alienage. However, the immigration judge took it upon himself to say, I can tie these things together, make some leaps in common sense inferences, and meet the burden for the Department, and that's impermissible. Even if this Court finds that the making of inferences to help the Department meet their burden is permissible, the inference is made by the immigration judge in this case. Did the judge say he was helping the Department make its? No, Your Honor, but he did help them because he did say the Department didn't meet its burden, and he had to make inferences in order to nudge it across the line for them. I find that as helping. Even if the Court finds that inferences are permissible in a situation of the Department of Homeland Security meeting its burden of proof, the inferences made in this case were not impartially made. The immigration judge took the exact same evidence, compared it to, excuse me, took the same evidence and used it in favor of the Department, saying, oh, this statement or this document is reliable to prove the Department's point, and then said, but it's unreliable for Mr. Escobar. So we have a statement by his mother which completely contradicts the birth certificate submitted by the Department. The statement the immigration judge uses and says, well, she says this, that, and the other. Therefore, we think that he must be from Honduras. However, that same statement, he'll take it and say, well, or he took it and said, well, you know, Mr. Escobar's mom's a liar. She was convicted of, I believe they said fraud. However, that's not what she was convicted of. So she was convicted, and she's a liar. So all of these things that she says that are in favor of Mr. Escobar's side, the immigration judge dismisses that. If the immigration judge can make inferences, he needs to make them impartially and not just cutting in favor of upholding the burden of proof which the Department did not meet on its own. Another point is that … And once it's made, I understand the clear and convincing. I understand the government has the burden. But in the end, the determination of alienation is a factual finding, right? Yes, Your Honor. Thank you. Proceed. Yes. And it's a legal question whether inferences are allowed. Sure. Proceed. What about this plea agreement executed by Mrs. Escobar, Ms. Escobar? So the plea … That looks like a … What's wrong with the concept that that's pretty strong proof of alienage, thinking about the fact that this person is in criminal proceedings of her own and she makes the statements in that plea agreement identifying her son and his place of birth? Yes. What's wrong with that? It's pretty strong evidence standing alone here. And, Your Honor, her statement, one of the issues with her statement is every statement says something different. The sworn statements included to support the plea agreement were made under the name Maria Mateo, which was not her name. So she swore to these statements under her false identity that she had stolen from a U.S. citizen. She gives statements that support the idea that Mr. Escobar is an alien. She also gives statements that support that the birth certificate produced is not his birth certificate, that the date of birth they allege for him is not his date of birth. We are relying on a statement of a woman sworn to Homeland Security Investigations while protecting herself. Her interests were not her children. Her interests were attempting to remain in the United States. That's why it's sworn under the name Maria Mateo, a U.S. citizen whose identity she stole. And, again, if we're going to accept this statement is true, then we need to accept that the birth certificate submitted for Mr. Escobar is not his. It's not his name. It's not his date of birth. It's also on a form that is not accepted by the Department of State for immigration purposes. It was generated after Mr. Escobar sought termination in immigration proceedings. This birth certificate did not exist until after Mr. Escobar sought to terminate his proceedings. It's a hairy issue when we're relying on the statements of a liar. But if we're going to rely on the statements of a liar, we need to take them evenly and say some of this statement goes in favor of the Department, some of this statement goes in favor of Mr. Escobar. But don't finders of fact do that all the time? They hear, they weigh, they compare, they acknowledge that they understand that some statements that a person may make may not be credible, but others may be. Absolutely, Your Honor. However, they weigh it, they reach a finding. And I agree, Your Honor. But if the immigration judge finds this statement to be reliable, then find it reliable across the board. You can't, it's hard to not find impartiality or bias when you're looking at a statement where every single part of a statement that is found to be reliable goes in favor of the Department, and every single part that he finds to be unreliable or dismissible goes against Mr. Escobar. It's not an impartial weighing of the evidence. All of these issues are dispositive of the case. However, the Court should also address that Mr. Escobar does merit deferral of removal under the Protection Against the Human Convention Against Torture. The Board bafflingly claims that he didn't even allege torturous acts would happen and that the acts he alleged would be unintentional. He found, he submitted proof that the immigration judge accepted that he would be sexually These are not unintentional acts, and they definitely qualify as torturous acts. So did the evidence reach the level of proving or showing that he would be, or that simply those things have at some point occurred in Honduras? Yes, Mr. Escobar did prove that those things were more likely than not to happen through a string of events because of his mental health status and the inability to access medication. But importantly, the Board rested its decision saying that Mr. Escobar didn't even be unintentionally committed. I know you're in time. I'll say it very quickly. Of course, they say specifically intended act of torture. And the intended is the verb of the previous sentence saying that the government or private actors that are like the government, specifically intended. So I think they're referring back to the previous sentence. I agree, Your Honor. It's hard to understand how someone can unintentionally rape, stone, beat, or forcibly sterilize someone. And I'll reserve the rest of my time for rebuttal. Thank you. Thank you, Your Honor.  Good morning, and may it please the Court. My name is Stephanie Groff, and I represent the Attorney General. Your Honors, this Court should uphold the agency's thorough determination that the Department met its burden of proof through clear and convincing evidence that Mr. Escobar is a native and citizen of Honduras. Further, once the burden shifted to Mr. Escobar, the agency correctly determined that he failed to meet his burden of proof that he was lawfully present in the United States. Additionally, this Court should uphold the agency's determination that Mr. Escobar did not merit cat deferral as he failed to establish the requisite specific intent to harm to constitute torture. Turning first to substantial evidence supporting the Department's burden of proof. Substantial evidence supports the agency's finding that Mr. Escobar here is a native and citizen of Honduras, as the Department here submitted voluminous evidence convincing his Honduran alienage. Specifically, what established his alienage? Sure, Your Honor. I do want to point out first there are two issues here which my opposing counsel in some ways conflates. First, whether documents can be admitted into the evidence, and that the basis for that is it must be probative and fundamentally fair, which the immigration judge here found overall the evidence is probative and fundamentally fair. Then the immigration judge looked to the evidence. While in he stated looking at it as a whole, he specifically relied on certain pieces, such as Mr. Escobar's mother's plea agreement. He looked in addition to some of Mr. Escobar's criminal convictions, comparing it to the plea agreement in which Ms. Escobar and Mr. Escobar have the same address. He also looked to the birth certificates submitted by the Department. So it's not disputed that, or is it disputed that Maria Escobar is his mother? It is not disputed. In fact, Mr. Escobar at no point before this Court, before the Board, have disputed that it is his mother. And therefore, before the immigration judge, it was also not disputed. And that's why the immigration judge looked at everything as a whole. Now, when stating as a whole, this is separate from the admissibility. The immigration judge admitted all the evidence, but when assigning it weight, immigration judges are not required to specifically assign an amount of weight they're giving or note every piece of evidence that they are not relying on. Rather, immigration judges have the ability to, yes, look at the record as a whole, explain how they're making these findings, and that's here what the immigration judge did. How can you rely on a birth certificate that doesn't have the correct name and birth date? So, Your Honor, the immigration judge here properly noted that while there were some inconsistencies with Mr. Escobar's name and Ms. Escobar's name, this could, again, be attributable to the plea agreement that Ms. Escobar signed under oath before the U.S. District Court for the Western District of Missouri. And there she was charged with 18 U.S.C. 1546 for possession of using false documents as evidence and authorization to stay in the United States. The immigration judge also noted that the Department submitted a letter from a Departmental Homeland Security Investigations agent who was stationed in Honduras explaining how he obtained these birth certificates, and the Department submitted evidence from the Honduran government itself explaining where these birth certificates came about. The immigration judge looked at all this and noted that, yes, while the names are inconsistent and some of the birth dates are different, this could be attributable back to the fact that Maria, throughout her time in the United States, used a U.S. citizen's name, used other names. In fact, the evidence showed that she – That seems to only create – well, one could reason that as a possibility. But when you're trying to establish something by clear and convincing evidence, it seems less than that. Well, Your Honor, clear and convincing evidence, and this Court has held that that is the burden of proof here. It's something indicating that it's to be proved is highly probable. Escobar is not an uncommon name. Well, yes. But clear and convincing evidence is not as strict as, say, beyond a reasonable doubt for criminal trials. And this Court has never held that it must be so proven and so specific. Clear and convincing evidence is looking as a whole. Is it highly probable or reasonably certain? It's definitely more than preponderance. Preponderance, yes. It's definitely more than substantial evidence. Well, substantial evidence here is this Court's standard. In fact, clear and convincing was what the immigration judge was finding, but this Court must uphold it if substantial evidence supports it. And if the record compels a contrary conclusion, then this Court can send it back. But the record here does not compel a contrary conclusion. While there are inconsistencies in the names, as stated previously, Mr. Escobar has never contested that Ms. Escobar is his mother. Looking first at her birth certificate, while there was a different name than that found in her various aliases in the United States, the immigration judge properly attributed this to be Ms. Escobar's birth certificate. And Mr. Escobar here has never contested that that is his mother. Then looking to Mr. Escobar's birth certificate, the immigration judge analyzed that, yes, there was a different name, but his mother had the same identification number as her birth certificate. It stated that she was born as a native and citizen of Honduras. And while the birthday for Mr. Escobar was different, again, this could be attributable to the fact that his mother consistently in the United States used different aliases, different names, and potentially did that with her children. It was unclear. Then further looking to the father listed, the immigration judge noted that it matched the father of Uriel Martinez Suazo, who they also submitted the birth certificate. He was a native and citizen of Honduras. Taking all of this into consideration, in Ms. Maria Escobar's plea agreement, which opposing counsel notes that there are various lies in this and the immigration judge relied on these lies, that is simply not the case. This plea agreement was signed under oath and does detail the factual allegations that led to her agreeing to this crime. Specifically, it started off stating that Maria was first approached by departmental officers after Mr. Escobar was arrested for a crime and HSI departmental agents stated, who is your mother? He went to Ms. Escobar and began the interview. Throughout all of the plea agreement, yes, it does detail her stating that her name is Maria Mateo eventually, but ultimately the conclusions state that she stole the identity of a U.S. citizen, that she has never legally resided in the United States, and that she is a citizen and native in Honduras. She signed that under oath. Now, therefore, the immigration judge took the plea agreement, the fact that she obtained a FHA federal loan under this U.S. citizen name and it matched the address of Mr. Escobar, there's no contesting that's his mother, and overall established that Mr. Escobar is a native and citizen of Honduras and through clear and convincing evidence, and we believe this Court should uphold that as it is supported by substantial evidence. Counsel, do you want to address what I'll call the footnote two argument? Yes, Your Honor. It looks like in footnote two the BIA is a little bit wrong or inaccurate. How do you characterize it? So the board in that footnote was a little confused about admission of evidence and the weight, as I mentioned previously. Specifically, I will want to point out to before footnote two, at the beginning of page four, the board does say that the standard for admitting evidence is whether it's prohibitive and fundamentally fair, which is correct. So the board did address the immigration judge's ultimate admissibility of the evidence, but then in the footnote he states that the immigration judge didn't rely on all the evidence. And here, as I mentioned previously, immigration judge admitting evidence to the record does not mean that they're relying on all of it. And they also do not have to specifically note every single piece of evidence they're relying on. Rather, statements such as in viewed in the whole, in the totality, those can just be attributed to the fact that the judge is doing what he is supposed to. He is looking at everything as a whole. He is looking at the record. And this specifically goes to — Rather, there is a discrepancy between the immigration judge and the BIA. Well, we would argue that it would not be appropriate to send it back because while they did, the board did say that the immigration judge didn't necessarily rely on some of the evidence. But you are now. No, I'm not. I am saying that the immigration judge— The position of the agency is that those documents are reliable and should have been relied on and were relied on. So, again, this is a — it's two different issues. We are arguing that it is probative and fundamentally fair to be admitted. And that is correct. When the immigration judge issued his decision relating to whether the department met clear and convincing evidence, we were saying that he's looking at the evidence as a whole and specifically denoting certain pieces of evidence. The immigration judge here didn't rely on every piece of evidence to find what the department met as burden of proof. For instance, the immigration judge specifically noted the I-213, which is normally what the department sets forward to establish alienage. But here, the immigration judge noted that there were various inconsistencies in this. For instance, it stated that his father was actually his uncle, that his father might have been a Puerto Rican citizen. The judge here noted that, yes, you know, while this is admitted, I'm not going to rely on this. Admission and whether it can be relied on for alienage are two separate things. And here, the board's statement, while noting that he didn't rely on everything, it's not appropriate for this Court to necessarily remand just to address that. And same with Ms. Hewitt's. Before we leave footnote 2. Yes. Tabs R, S, U, V, and Y, do you know what they really are of the other items that we talk about all the time? Aren't. Yes. Do you have footnote 2 handy? Yes, I do. Okay. Take a look at footnote 2 because it doesn't, it sounds like it's talking about all of Exhibit 8, but I think it's only talking about five tabs in the video. Five tabs. Yes, Your Honor. Okay. Do you know what the five tabs are? If you don't, we can look after our argument. Yeah. I do. On here, it says Exhibit 8. I'm looking at the immigration judge's decision where it is talking about the I-213. I know that was at Exhibit 8, there, page 172. I think a lot of things are. We'll check later. Proceed. Yes, Your Honor. I do believe those are specifically just discussing the fact that the immigration judge focused on specific pieces of evidence as I went through the plea agreement, the birth certificates, the criminal convictions of Mr. Escobar, and, therefore, any arguments that the petitioner raised before the board relating to certain documents weren't necessary because in looking at the evidence that the immigration judge relied on, it was strong and it ultimately established by clear and convincing evidence that Mr. Escobar is a native and citizen of Honduras. And I do want to turn to Ms. Hewitt's argument. As we're looking at this, can we hone in on parts of documents that the immigration judge considered but that the immigration judge really didn't comment about? What I'm really talking about is in this plea agreement, the Maria Escobar plea agreement, there's the recounting of an interview by a Homeland Security special agent of Mr. Escobar, which some would argue indicates that he has been intentionally obscuring information as to his birth. In fact, he wishes the agent good luck when the agent says he's going to launch an investigation. Yes, Your Honor. Can we hone in on that, even though the immigration judge didn't focus on that, these pages? Well, the immigration judge addressed the plea agreement and looked at it as a whole in determining that Ms. Escobar has been lying and misstating about who she is. This Court, when reviewing evidence under the substantial evidence, must uphold it unless the record compels a contrary conclusion. The government here is arguing that what you just stated, the fact that Mr. Escobar, to a government agent, stated good luck in figuring out who he is, just further supports the fact that he is withholding potential information that he has for the fact that he just does not know where he's from, based on his mother's consistent behavior of utilizing U.S. citizens' identities and not being clear about her name, her children's name, where they're from, who his father is. And while the government acknowledges that that is a difficult thing, to not fully understand where you're from, the record here does not compel a contrary conclusion, and this Court should find that it's upheld by substantial evidence and can utilize that statement that the — that shows how this whole thing even began by Mr. Escobar's interview with the departmental agent. Roberts, do you want to use at least some of your remaining time to address the Convention Against Torture claim? Yes, Your Honors. Turning to the Convention Against Torture, we would argue here that this Court should uphold the finding of the agency. While Ms. Hewitt argues that the board incorrectly stated that Mr. Escobar did not challenge his CAT determination, this is a misunderstanding of what the board is actually saying. In fact, the immigration — the board was stating that the petitioner did not state before the board whether he would be specifically intended to be harmed if removed. That specific finding of the immigration judge is ultimately what the board relied on, and we believe that substantial evidence supports it. Being — in order to meet your burden of proof for CAT, the harm must be specifically intended to a person. And here, while there are country conditions evidence relating to the poor conditions in either prisons or mental institutions, this does not ultimately meet the high burden of proof that it is more likely or not that Mr. Escobar would be specifically — reached out and specifically intended to be tortured by Honduran government officials or other officials acting in official capacity. Was there evidence addressing his concern about the receipt or the ability to receive appropriate medication for his condition? The board did not address that here. We were rather just focused on specific intent. The board noted that because they could ultimately rely on that, they didn't go into it. But the immigration judge here did go through the hypothetical chain of events, which I will note includes deducing different inferences and statements of if he were to — may I please finish? Please. If he were to be removed, that he would either be — come to the attention of authorities, that he would either be placed in a mental institution, that he would maybe be in prison. All these hypothetical chains the immigration judge found weren't proven, but here the board specifically relied on the fact that he failed to meet the specific intent for harm to constitute torture and ultimately correctly denying his application for cat deferral.  Thank you, counsel. The burden of proof to establish alienage is so high because this is a human's life, potentially. Being deported can result in death for many people. There's a reason why the burden is so high, and it's important to recognize that you cannot willy-nilly name someone as an immigrant just because their mother is an immigrant. Also, establishing alienage — Being alien, right? Yes. Yes. Proceed. Yes. Establishing that someone is an alien is not just proving that his mother was born in Honduras or that he potentially was born in Honduras. Clear and convincing evidence is that high of a standard on purpose. The judge, as Respondent has explained, is capable of explaining what he didn't rely on. He did not rely on the I-213 to establish alienage. After that, he did not discuss any other documents that weren't relied on. So the Respondent says, well, the immigration judge didn't actually rely on these documents. We don't know that. The Board may be able to address that. Maybe the immigration judge needs to address that. This Court cannot determine that. All we know is that the immigration judge did not rely on the I-213. The rest of the evidence was taken in total, was seen together, was expressly — was expressly listed out. So the Board, in its very brief decision that, oh, we don't need to address admissibility or reliance because they weren't relied on, it's incorrect. And this Court cannot sit here and make a decision on what the immigration judge did or did not rely on without allowing the Board under Chenery to look at this in the first instance. And for these reasons, we ask that you remand his case or grant him his deferral of removal under the cap. Thank you.